# IN THE COURT OF APPEALS OF IOWA

No. 21-1657
Filed October 19, 2022

**HONG TRUONG,**
        Plaintiff-Appellant,

**vs.**

**TRANG HUYNH,**
        Defendant-Appellee.
_____

Appeal from the Iowa District Court for Woodbury County, Tod Deck, Judge.

A plaintiff appeals the district court ruling denying her claim for damages from an alleged oral contract. **AFFIRMED.**

Jessica A. Board of Heidman Law Firm, P.L.L.C., Sioux City, for appellant.

Randy Hisey (until withdrawal) and Trang Huynh, Sioux City, self-represented appellee.

Considered by Ahlers, P.J., and Badding and Chicchelly, JJ.

**CHICCHELLY, Judge.**

Hong Truong appeals the district court ruling denying her claim for damages from an alleged oral contract with Trang Huynh. Hong argues the district court erred in relying on the testimony of a non-party witness and that its findings conflicted with the substantial evidence of the case. Finding no error of law, we affirm the court's ruling.

## I. Background Facts and Proceedings.

Hong and Trang met within the last several years at their mutual workplace. Hong contends that she loaned money to Trang on four occasions. The first alleged loan involved approximately $3300 and was repaid in full. Hong maintains that, over the course of three subsequent dates, she gave Trang cash totaling $97,400 with the understanding that Trang would repay her in full and without interest. Hong believed the money was intended to purchase and insure vehicles for Trang's children. She expected Trang to repay her with life insurance money that was anticipated from the death of Trang's mother.

After several months passed without any repayment, Hong wrote up a document to memorialize the loan, which was admitted at trial as exhibit 1. She explained that Trang came to her home, read the document, and signed it. A friend of Hong's testified that she signed the document as a witness. However, the friend stated that she did not actually see Trang sign the document because she was in a different vehicle and "Hong did not want me to come out because if Trang saw me, she would not sign." Hong also shared a recording of a phone conversation she had with Trang, in which Hong stated, "You owe me money, for a total of $97,400 is that right Ms. Trang?" and Trang replied, "That's right. If I get a job I'll

pay you back . . . ."[1]  Hong ultimately brought an action against Trang in district court seeking payment for the alleged loan.

Trang testified that she never borrowed money from Hong but they played a game of tontine—or hui, as it is known in the Vietnamese community.  She indicated that Hong told her she won approximately $3000 in the game, but she received significantly less than that and paid it all back.  Trang also testified that she is illiterate and that it was not her signature on the document Hong presented to memorialize the alleged loan.  She stated that she received money after her mother's death in 2016 and that she bought vehicles for her children in 2016 and 2018 but has not paid the associated loan off yet.  With regard to the voice recording, Trang acknowledged that it was her speaking but explained that she thought Hong was kidding about owing her such a large sum of money and simply went along with it.

Trang subpoenaed the testimony of a woman who is a Vietnamese translator.  This individual testified that she provides translation services for Trang, which sometimes includes the reading of documents in Vietnamese because Trang cannot read.  The translator also shared that a lot of Vietnamese people in their community participate in an investment group known as hui, which involves paying a weekly sum of money that earns interest if you play at the end of the game but incurs penalties for withdrawing early.  The translator stated that she does not play the game herself because it is too risky but that Trang asked her to interpret for "hui like investment."  When asked whether she had personal

---

[1] The document and phone call were translated from Vietnamese, and the parties participated in the proceedings via interpreters.

knowledge of Trang's participation, the translator indicated that Trang told her she participated and that she hears in the community that Hong is an investor. She stated that everything she testified about was based on what Trang told her in her job as a translator and that she is not friends with either Trang or Hong.

After a bench trial in June 2021, the court found the parties were participating in "some type of rotating savings and credit association" (RSCA). The court included a footnote, which quoted *Mi Bong Hong v. Chong Chin Cha*, 979 A.2d 250, 252 n.1 (Md. Ct. Spec. App. 2009), for some insight into this finding:

> A rotating credit group
>> typically consists of a small number of people (ten to thirty), who periodically contribute money to a pot. At the beginning of each period, one member takes the pot. Members determine the recipient by lottery or bidding. Failure to make timely payments and other breaches result in nonlegal sanctions such as criticism that, carried along the channels of gossip, injures the defaulter's reputation and may lead to social ostracism. When everyone has taken one pot, the group dissolves.
>
> Eric A. Posner, *The Regulation of Groups: The Influence of Legal and Nonlegal Sanctions on Collective Action*, 63 U. Chi. L. Rev. 133, 169 (1996).
>> . . . .
>> Many other cultures also have a tradition of rotating credit groups . . . [i]nclud[ing] "cundina" (Mexico); "tanamoshi" (Japan), and "esusu" (West Indies and West Africa); "hui" (China and Viet Nam); "tong ting" (Cambodia) and "ekub" ("Ethiopia"). *Looking at Communities and Markets*, 74 Notre Dame L. Rev. 841, 874 (1999). . . . [T]hese groups have played a significant role in fostering the economic development of immigrant communities in the United States. *Id.* at 879.

The court's ruling noted it was unable to definitively find much more by way of facts. It determined Hong failed to prove the existence of a contract, concluding:

> This is a difficult case and it could be that the defendant has gotten away without repaying some money that she owes, but the court is bound by the law and the evidence. The burden is on the plaintiff.

> When the court simply cannot determine what took place, a plaintiff fails in their burden. The plaintiff's claim fails.

The court found both Hong's and Trang's credibility questionable but noted the translator's testimony was credible. After the court denied Hong's claim, she filed a timely appeal.

## II. Review.

"In a law action tried to the court, our review is for the correction of errors at law, and the district court's findings of fact are binding on us if they are supported by substantial evidence." *Poller v. Okoboji Classic Cars, LLC*, 960 N.W.2d 496, 509 (Iowa 2021) (citation omitted). "Evidence is substantial for purposes of sustaining a finding of fact when a reasonable mind would accept it as adequate to reach a conclusion." *Falczynski v. Amoco Oil Co.*, 533 N.W.2d 226, 230 (Iowa 1995) (citations omitted).

## III. Discussion.

Hong argues the district court erred in relying on the translator's testimony at trial because she had no personal knowledge about whether the parties were engaged in a RSCA. After all, "[a] witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter." Iowa R. Evid. 5.602. While the translator's personal knowledge of Hong and Trang's participation was unclear, her testimony regarding the existence of this type of investment group among the local Vietnamese community lends credibility to Trang's testimony about playing hui with Hong. Moreover, the translated exhibit offered by Hong included the phrases "borrowed to contribute," "shares paid for," and "tontine shares." The document concluded

with a vague "total" that did not make clear what may have been owed. Overall, the writing supports the court's finding on the parties' participation in some form of a RSCA. Therefore, in determining whether substantial evidence supports this finding, we conclude there was "a proper basis on which the trial court *could* find as it did." *Reg'l Util. Serv. Sys. v. City of Mount Union*, 874 N.W.2d 120, 127 (Iowa 2016) (citation omitted).

Hong next argues that the district court ruled against the substantial weight of the evidence when it held that Hong failed to prove: (1) Hong loaned money to Trang, (2) Trang read exhibit 1 or otherwise knew what it said, and (3) Trang signed exhibit 1. However, each of these determinations ultimately come down to credibility and interpretation of the written exhibit. While the district court found Hong's and Trang's credibility questionable, it found some credibility in the evidence that Trang is not able to read well. It also observed that exhibit 1 "does not establish the amount owed and suggests to the court that it is referring to some form of periodic payments related to the RSCA." The testimony of Hong's friend who signed the purported contract offered little value given that she did not actually converse with Trang or observe her sign the document. We find that reasonable minds would accept the record evidence as adequate to reach the court's findings of fact.

Furthermore, the court observed that even if Hong established the existence of a contract, she failed to prove the terms of such contract. *See Royal Indem. Co. v. Factory Mut. Ins. Co.*, 786 N.W.2d 839, 846 (Iowa 2010) ("To prevail on a breach of contract claim, [the plaintiff is] required to prove: (1) the existence of a contract, (2) the terms and conditions of the contract, . . . ."). Given the utter lack of clarity

surrounding the supposed cash exchange, we agree with the court's analysis. "[W]hen the trial court following a bench trial has denied recovery because a party failed to sustain its burden of proof on an issue, we will not interfere with the trial court's judgment unless we find the party has carried its burden as a matter of law." *Falczynski*, 533 N.W.2d at 230 (citations omitted). "We will conclude a party has carried such a burden only when evidence is so overwhelming that only one reasonable inference on each critical fact issue can be drawn." *Id.* (citation omitted). Hong's self-serving testimony, contentious exhibit, and phone recording do not provide the overwhelming evidence necessary to find she has carried her burden of establishing a contract or its terms as a matter of law. While the recording is most helpful for Hong, it simply does not establish the preponderance of evidence necessary in this case. In light of the record before us, we uphold the trial court's denial of Hong's contract claim.

**AFFIRMED.**